## VALENTINE *v.* FARRINGTON and others.

Where a party is attempted to be fixed as a principal in a money bond and the defence is that he was a surety only and had required the obligee to sue the other party as principal and such obligee had neglected to do so: this is new matter, and, when put in issue, must be made out distinctly and beyond all reasonable doubt. A full and explicit notice or request from the surety to the creditor to proceed without delay to collect the amount from the principal debtor, must be proved; and, in order to exonerate the surety, it must also appear that the creditor has improperly refused or neglected to do so, and, by such refusal or neglect, the means of recovering the debt of the principal have been lost by intervening insolvency or from some other cause.

A bill by a bond creditor, upon a joint and several bond, will be sustained against the heirs and devisees of a deceased obligor, although filed before the legal remedy has been exhausted against the surviving obligor. It is only necessary to make the latter a party.

Although an action is brought by a creditor of a testator against the executors, which proceeds only to a plea, and then the creditor files a bill on behalf of himself and others, to account, and makes the executors and devisees parties, who answer, no valid objection to a decree arises on the ground of the action pending at law: because the executors can be no longer vexed by the latter.

This was a bill by a bond creditor against the devisees of a deceased obligor, for an account and payment and satisfaction out of real estate.

The bond had been given on the sixth day of May, one thousand eight hundred and seventeen, by Jonas Farrington (deceased) and George Farrington, junior, to the complainant, conditioned to pay one thousand dollars, with interest. The obligors bound themselves, their heirs, executors and administrators, jointly and severally, for payment of the money.

In the month of September, one thousand eight hundred and twenty-two, the said Jonas Farrington made his will; and thereby devised his estate, real and personal, to his children and grand-children, who were defendants in the cause, and he appointed them executors thereof. He afterwards died; the will was proved; and letters testamentary were granted to two of his sons. During the year one thousand eight hundred and twenty-four, the complainant commenced

*April 19th.
1833.*

*Bond.
Principal
and Surety.
Party.*

a suit at law against the executors upon the bond. They pleaded *plene administravit* before notice of the bond. No further proceedings appear to have been had at law.

In the month of April, one thousand eight hundred and thirty, the complainant filed her bill, on behalf of herself and all other creditors of the testator, asking for an account from the executors of the personal estate and to have the same applied in a due course of administration, and praying also a discovery of the situation and value of the real estate and to have the same sold for the purpose of paying debts, &c. The answers admitted the making of the bond and, generally, all the other allegations in the bill; but it set up, by way of avoidance or defence, that the bond was given for money borrowed of the complainant by the surviving obligor, George Farrington, junior, and the testator joined in the bond as a surety; also, that after his death, the complainant was requested to take measures for compelling the principal debtor to pay the money, he being at the time possessed of property and well able, and yet the complainant refused or neglected to call upon him for payment and omitted so to do until he became insolvent; and that the loss of the money, by his insolvency, was owing to the negligence, in this respect, of the complainant, who, therefore, ought to bear the loss, she well knowing the testator was security only and not the principal debtor. In order to uphold this defence, several witnesses had been examined; and some counter-testimony also taken. It was difficult to say, from the defendants' evidence, whether the testator was merely a surety in the bond or the borrower himself, and, therefore, the principal debtor; at any rate the point was left in doubt. The subscribing witness to the bond, who was examined on the part of the defendants, testified, that he was present when the money was loaned for which the bond was given and the application for it was made through him, in the first instance, by Charles Farrington, and George Farrington junior, they proposing to give their father, the testator, as security, and the complainant consented to let them have the money upon his security; that, afterwards, George came for the money and stated that Charles had declined being a party, and he, George, and the father had concluded to take the

money, and the bond was accordingly made and the witness     1833.
handed over the amount, which had been left with him by
the complainant, that is to say, to George the sum of two   VALENTINE
hundred dollars, and to the father, the testator, a certificate   v.
of a deposit in bank for eight hundred dollars.  How the    FARRINGTON
money obtained upon the certificate was applied, did not ap-
pear, but it was in evidence that the son George had request-
ed the bond might remain with the person through whom the
loan was obtained, for the convenience of himself in calling
to pay the interest, and also, that he had paid the interest for
several years in succession.

The son George, who was made a defendant, had suffered
the bill to be taken as confessed.

Mr. *W. N. Dyckman*, for the complainant.

Mr. *R. Bogardus*, for the defendants.

*July* 22nd.

THE VICE-CHANCELLOR:—The defence set up by the an-
swer, as to the debt being the son's and the want of diligence
in collecting the amount of it after a request had been made,
is new matter; and, on account of issue being taken upon
it, the defendants are bound to make out the same by proof.
The application of the money does not sufficiently appear.
The son George is, perhaps, the only person who could ex-
plain it; and yet, although he has allowed the bill to be
taken as confessed against him and might have been exa-
mined as a witness, he has not been.  In the absence of
his testimony and upon the evidence before me, the inference
is as strong, if not stronger, that the father and son were
joint borrowers and both principals in the bond, as that
George was principal and his father a surety merely.  But,
the evidence is not conclusive of the father's being any more
than a surety.

In order to entitle the defendants to the rule of law upon
which such a defence is founded, they are bound to make out
the fact of suretyship affirmatively and beyond all reasona-
ble doubt.  This they have not done.

Nor have they been more successful upon the other points
which it was necessary for them to have proved.

The principle to be gathered from the cases of *Pain* v.

*Packard*, 13. J. R. 174. and *King* v. *Baldwin*, in Error, 17.
Ib. 384. requires a full and explicit notice, or request from
the surety to the creditor to proceed without delay to collect
the amount from the principal debtor; and, in order to exon-
erate the surety, it must also appear that the creditor has im-
properly refused or neglected to do so and, by such refusal or
neglect, the means of recovering the debt of the principal have
been lost by intervening insolvency or from some other cause.

The testimony before me (even if the leading fact were
established) falls short of proving the requisite notice or re-
quest to the complainant to proceed against George Farring-
ton or of improper delay; and it is still more difficult to ga-
ther from the testimony that George Farrington was, at the
time of the alleged request, able to pay the debt or that the
loss (if such it be) to the estate of the deceased obligor, in
consequence of the present insolvency of the surviving obli-
gor, is the result of or in any degree attributable to a remiss-
ness on the part of the complainant.

There are one or two objections which were made at the
hearing and not raised by the answer. If they would hold,
they might have been raised by a demurrer. I will now no-
tice them. The first is, that a bill in behalf of a bond credit-
or ought not to be supported in this court against the heirs
or devisees of a deceased obligor, especially if he were a
surety, until the legal remedy has been exhausted against the
surviving obligor. This objection is clearly not well taken.

The bond is joint and several; and, according to the latest
authorities, it is only necessary to make the surviving obli-
gor a party to the suit: *Haywood* v. *Ovey*, 6. Mad. C. R.
113.; *Bland* v. *Winter*, 1. S. & S. 246.; and see, Edwards
on Parties, 99. to 102. The other objection is: the suit a-
gainst the personal representatives ought to have been pro-
secuted to judgment or discontinued before filing a bill here.
I think this is sufficiently met by the fact of the executors
being parties to this suit, both as executors and devisees;
and, because, from having been brought here for the purposes
of accounting, they can be vexed no further in the suit at law
by the same creditor(*a*)—and besides, they show, as execu-

---

(*a*) Nor by other creditors: *Clarke* v. *The Earl of Ormonde*,
1. Jacob's Rep. 122, 123, 124.

ters, they have fully administered and have no assets arising from the personal estate for which they can be made further liable.

I must declare the bond a subsisting debt against the estate of the testator, Jonas Farrington; and direct the usual reference to take accounts and for sale of the real estate.